UNITED STATES *v.* BEYDA FRANCO & CO.; CAMPBELL, METZGER & JACOBSON (No. 3749)[1]

United States Court of Customs and Patent Appeals, December 10, 1934

*Joseph R. Jackson*, Assistant Attorney General (*Charles D. Lawrence*, Special Assistant to the Attorney General, and *William H. Futrell*, special attorney, of counsel), for the United States.

*Curie, Lane & Wallace* (*Samuel Isenschmid* of counsel) for appellees.

[Oral argument October 5, 1934, by Mr. Lawrence and Mr. Isenschmid]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

The Government has here appealed from a judgment of the United States Customs Court holding certain imported merchandise, invoiced as "Brittony lace" or "Bretonne lace", dutiable at 75 per centum ad valorem under the second provision of paragraph 1430 of the Tariff Act of 1922, thus overruling the assessment by the Collector of Customs at 90 per centum ad valorem under the first provision of said paragraph.

The material portions of the contesting provisions of the paragraph read as follows:

[First provision]: Laces, * * * nets and nettings, embroidered or otherwise, * * * and all fabrics and articles composed in any part, however

---

[1] T. D. 47441.

small, of any of the foregoing fabrics or articles; all the foregoing, finished or unfinished, * * * by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act, * * * 90 per centum ad valorem;

[Second provision]: embroideries not specially provided for, and all fabrics and articles embroidered in any manner by hand or machinery, * · * * 75 per centum ad valorem.

No oral testimony was presented at the hearing, but a sample of the merchandise was submitted, together with a stipulation, the pertinent portions of which read:

1. That the sample submitted herewith may be received in evidence as exhibit 1, in the instant case, and is representative of all the merchandise invoiced as "Brittony lace" or as "Bretonne lace", and which merchandise was returned for duty at 90 per centum ad valorem, under paragraph 1430, Tariff Act of 1922.

2. That the design on the body of exhibit 1 was made by hand running a thread with a blunt needle through the open spaces of a plain machine-made net, in accordance with a preconceived pattern; that the edging was independently fabricated, and attached by hand running a thread through the open spaces at one side of the edging and the open spaces on the edge of the net; and that the finished article so made is known as "Brittony lace" or "Bretonne lace."

The trial court rests its decision upon the authority of *United States* v. *F. A. Ramig Co.*, 17 C. C. P. A. (Customs) 365, T. D. 43809, wherein this court affirmed the trial court's judgment in T. D. 43333, and upon that of *Beyda, Franco & Hamway* v. *United States*, T. D. 46177, where no appeal to this court was taken.

In the argument before us Government counsel lays much stress upon the statement of the stipulation that the design on the body of the exhibit "was made by hand running a thread with a blunt needle through the open spaces of a plain machine-made net, in accordance with a preconceived pattern." It is not, however, insisted that the fact that the work was done by hand rather than by machine is material. The argument is confined to the insistence that the actual threads of fabric of the lace were not pierced by the blunt needle— that it was inserted through the open spaces or interstices, and certain authorities are cited with respect to "Punto in Aria" or "stitches in the air."

This argument seems likewise to have been pressed before the trial court whose comment upon it is:

* * * In none of the definitions of embroidery which we have examined do we find any reference to the kind of a needle used, whether blunt or sharp-pointed. It is the result of the needlework which determines whether or not an article is embroidered, rather than the kind of a needle used.

We think this is a sound conclusion, and, it may be added that, from an inspection of the exhibit we entertain great doubt whether the threads of the fabric could practicably be pierced by even a fine needle point.

Were the foregoing the sole issue of the case, therefore, affirmance of the judgment rendered by the United States Customs Court would, in our opinion, be proper, but the brief on behalf of the Government makes a further contention as follows:

Assuming, without admitting, that the stitchery on the plain net is embroidery (as the court below holds), the natural conclusion would be that it is embroidery on net and is covered by the provision in paragraph 1430 for "nets and nettings, embroidered or otherwise." The merchandise, therefore, would be specifically provided for in that provision in the first part of paragraph 1430. The classification of the merchandise either as "laces" or as "nets and nettings, embroidered or otherwise" is more specific than the provision for "embroideries not specially provided for," and * * * "articles embroidered * * *," under the second part of the said paragraph.

The appeal in this case seems to have been taken practically concurrently with two other appeals, one of which, *United States* v. *F. M. Jabara & Bros.*, 22 C. C. P. A. (Customs) 77, T. D. 47065, was decided by this court April 30, 1934, and the other, *United States* v. *Beyda Franco Co.*, 22 C. C. P. A. (Customs) 441, T. D. 47426, is decided concurrently herewith.

The case at bar is clearly distinguishable from the *Jabara & Bros.* case, *supra*, in that the evidence in the latter case was found to have conclusively established the fact that certain buttonhole stitches in the merchandise there involved were ornamental and without utilitarian purpose. Hence the buttonhole stitches were held to constitute embroidery and render the articles "lace articles embroidered." Here we have no feature in the articles which corresponds to the ornamental buttonhole stitches there present.

Full consideration, however, leads us to the conclusion that there is no distinction in principle between the *Beyda Franco & Co.*, case, *supra*, and the instant case. The conclusion in both cases should, therefore, be the same. The reasons and authorities upon which our decision in that case is based are set forth in the opinion there, and need not be here repeated.

The judgment of the United States Customs Court is *reversed*.